## EX PARTE LEE LILLARD.

No. A-6835. Decided June 18, 1958.
Rehearing Overruled July 23, 1958.
(314 S.W. 2d Series 800)

*Harris & Reeves* and *Jack E. Harris*, of Arlington, for relator.

*Clyde & Barnes* and *Al Clyde* of Fort Worth, for respondent.

MR. JUSTICE NORVELL delivered the opinion of the Court.

On the 25th of April, 1958, the Judge of the District Court of Tarrant County, 153rd Judicial District, entered an order in Cause No. 4965-c on the docket of said court, styled Imagene Lillard v. Lee Lillard and wife, Jean Lillard, in which he found that Lee Lillard had violated a prior order of said court dated June 7, 1957 relating to the custody of John S. Lillard, Jr., the five-year-old minor son of Imagene Lillard and a nephew of

Lee Lillard. It was accordingly ordered that said Lillard be held in contempt of court and committed to the county jail of Tarrant County for a period of three days and "as long thereafter and until such time thereafter as the said Lee Lillard wilfully and completely purge himself from contempt of court * * *."

This court granted leave to file the application for writ of habeas corpus, and admitted Lillard to bail pending a hearing of the cause.

The writ of habeas corpus will issue as prayed for and the relator will be discharged from the custody of the Sheriff of Tarrant County, Texas. We are of the opinion that the District Court of Tarrant County, Texas was without jurisdiction to render the order of June 7, 1957 because of a prior attaching and exclusive jurisdiction of the Juvenile District Court of Dallas County, Texas to fix and determine the custodial status of the minor John S. Lillard, Jr. Ex parte Eaton, 151 Texas 581, 252 S.W. 2d 557.

The judicial history of the present controversy is somewhat complicated and may be best understood by setting forth the pertinent events in chronological order.

On February 15, 1956 plaintiff Imagene Lillard was granted a divorce from John S. Lillard in Cause No. 6304-G/J on the docket of the Juvenile District Court of Dallas County, Texas, hereafter referred to as the Dallas Court. That part of the decree relating to the custody of the minor son of the parties was as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED THAT Plaintiff be granted custody of the child, John S. Lillard, Jr., as long as the child is left in the home of Mr. and Mrs. Lee Lillard of Arlington, Texas. It is ordered by this Court that the said child remain in the home of Mr. and Mrs. Lee Lillard under their guidance until further orders from this Court."

On June 3, 1956 the Dallas Court entered an order directing the Sheriff of Dallas County to take possession of the child and turn him over to Mr. and Mrs. Lee Lillard. Evidently at this time some controversy had developed between Imagene Lillard and Lee Lillard concerning the infant and Imagene Lillard had taken the child from the home of Mr. and Mrs. Lee Lillard.

On September 25, 1956 Imagene Lillard filed a pleading in the Dallas Court which she designated as a "Motion for the change of residence of the minor child, John S. Lillard, Jr., and/or amendment of judgment." While the pleading was filed under the same docket number as that given the original divorce suit, we think it must be considered as the institution of a new suit which had for its purpose the changing of the order relating to the custody of the minor, John S. Lillard, Jr. Lakey v. McCarroll, 134 Texas 191, 134 S.W. 2d 1016, Ex parte Webb, 153 Texas 234, 266 S.W. 2d 855; Black v. Black, Texas Civ. App., 2 S.W. 2d 331, no writ history. In this pleading Imagene Lillard alleged that a change of conditions affecting the custody of the child had taken place since the rendition of the original divorce decree and that she should be given "full custody of said minor child without any qualifications or conditions whatsoever." She prayed that John S. Lillard be cited to appear and show cause, if any there be, why such child should not be placed in her custody.

(The motion mentioned was evidently an amended motion. The designation "Amendment to Motion for Change of Residence" appears at the top of the first page thereof. A copy of the docket entries of the Judge of the Dallas Court filed among the papers of the case discloses the following:

9-11-56   File Motion change residence.

\*   \*   \*

9-19-56   File Plea of Privilege

9-20-56   Non-suit as to Lee Lillard

\*   \*   \*

9-25-56   File Amended Motion

9-27-56   Plaintiff movant granted leave to amend and make new parties.

None of the pleadings or orders mentioned in the above docket entries are before us. It may be that Lee Lillard was a party to the original "motion," filed a plea of privilege to be sued in Tarrant County, the place of his residence and was thereafter dismissed from the suit. He was not a party to the "motion" of September 25, 1956, although the purpose thereof was to abrogate the requirement of the original decree that the

minor child remain in the residence of Mr. and Mrs. Lee Lillard.)

On February 26, 1957[1] Imagene Lillard, without dismissing her suit or motion filed in the Dallas Court on September 25, 1956,[2] filed suit against Lee Lillard and wife Jean Lillard, in the District Court of Tarrant County, 153rd Judicial District, hereinafter referred to as the Tarrant Court, wherein she sought full custodial rights in and to the minor child, John S. Lillard, Jr., as against the named defendants. Her husband, John S. Lillard, was not named as a defendant in this suit. This cause was docketed as Cause No. 4965-C.

In their answer[3] filed in Cause No. 4965-C, defendants Lee Lillard and wife pleaded in abatement that there was a suit pending in the Dallas Court "for identically the same cause of action; the same subject matter is in dispute, the custody of John S. Lillard, Jr. That the case is still pending; that the plaintiff in that suit is the same plaintiff as in this suit and the Court in Dallas County, Texas, gave leave to plaintiff to amend in that cause to bring in Mr. and Mrs. Lee Lillard."

On May 24, 1957 John S. Lillard, the defendant in the case pending in the Dallas Court (Cause No. 6304 G/J) filed an application for a temporary restraining order to prevent Imagene Lillard from taking the child from the home of Mr. and Mrs. Lee Lillard. This restraining order was issued as prayed for and the application for temporary injunction set for June 14, 1957.

On June 7, 1957 the Tarrant Court, after a hearing which took place on May 24, 1957 (according to the recitations of the judgment) rendered a decree in Cause No. 4965-C which awarded full and complete care, custody and control of the minor to Imagene Lillard and ordered Lee Lillard and wife to deliver possession of the child to Imagene Lillard forthwith. Notice of appeal from this judgment was given but no appeal was perfected.

---

1.—The date of filing is not shown by the exhibit atatched to the answer of respondent Harlon Wright, Sheriff of Tarrant County, Texas. The date given is that appearing upon an affidavit attached to the petition which we assume was the same as the date of filing.

2.—Sometime between the dates mentioned, that is September 25, 1956 and February 26, 1957, Imagene Lillard changed attorneys and secured new counsel to represent her.

3.—The date of the filing of this answer is not disclosed by the certified copy thereof.

On June 10, 1957 the Tarrant Court issued an order to the Sheriff of Tarrant County in which it was recited that Lee Lillard and wife Jean Lillard were forcibly holding the minor child, John S. Lillard, Jr., despite the Court's order of June 7, 1957 that the child be forthwith delivered to Imagene Lillard. The sheriff was ordered to take physical custody of the child and turn him over to Imagene Lillard.

On June 14, 1957 an additional application for a restraining order against Imagene Lillard was filed in the Dallas Court by an attorney for John S. Lillard, alleging that she intended to take the child out of the state and thus defeat the jurisdiction of the court. This application, in addition to a prayer for injunctive relief, requested "that on final hearing hereof, that the custody of said child be permanently placed with Mr. and Mrs. Lee Lillard or, in the alternative, that the legal custody of said child be placed with the Dallas County Juvenile authorities, and physical custody be placed with Mr. and Mrs. Lee Lillard, with specific and reasonable visitation privileges to plaintiff (Imagene Lillard) herein." The restraining order was issued as prayed for and the hearing upon the application for a temporary injunction was set for June 28, 1957.

Also on June 14, 1957 John S. Lillard filed an amended original answer[4] in reply to the pleading filed by Imagene Lillard on September 25, 1956 in the Dallas Court wherein she sought a modification of the child custody provision contained in the original divorce decree. This amended answer alleged that the child was suffering from cerebral palsy and required constant medical attention. By way of cross-action, John S. Lillard sought to have the custodial rights in and to the child placed with Mr. and Mrs. Lee Lillard permanently or "in the alternative, that the legal custody be placed with the Dallas County Juvenile authorities and that the physical custody of said child be placed with Mr. and Mrs. Lee Lillard." This answer was signed by the same attorney who filed the application for injunctive relief above mentioned.

On June 28, 1957 the Dallas Court entered an order reciting the appearance of John S. Lillard in person and by attorney, service of notice of hearing upon Imagene Lillard and default on her part. The court found that Imagene Lillard had violated a previous order of the court by removing the child from the custody of Mr. and Mrs. Lee Lillard; that the child

---

4.—The original answer of John S. Lillard is not before us.

was in need of immediate medical attention and decreed that Sam Davis, Dallas County Chief Probation Officer, have legal custody of the child until further order of the court.

On July 2, 1957 John S. Lillard filed a motion which resulted in the Dallas Courts issuing an order directing the sheriff of any county in the State of Texas, wherein the child may be found, to forthwith take the physical possession of such child and deliver him to "the Chief Probation Officer, Dallas County, Texas, or whomever the Chief Probation Officer's Office designates should have custody of said child."

Sometime after the rendition of the Tarrant Court judgment on June 7, 1957 Imagene Lillard gained possession of the child and took him from Texas to the State of California. Sam Davis, the Chief Probation Officer of Dallas County, to whom custody of the child had been awarded by the Dallas Court, attempted without success to gain physical possession of the child by legal means through the California authorities.

On April 16, 1958 John S. Lillard and Lee Lillard, apparently acting under some supposed claim of right arising from the orders of the Dallas Court, gained possession of the child and took him from the residence of Imagene Lillard in Antioch, California and returned him to Texas. They then delivered the child to Sam Davis, the Chief Probation Officer of Dallas County. This action by Lee Lillard undoubtedly constituted a violation of the decree of the Tarrant Court of June 7, 1957 which awarded full and complete custody of the child to Imagene Lillard.

On April 24, 1958 the Tarrant Court rendered its contempt judgment as heretofore mentioned.

On May 5, 1958 the Dallas Court[5] refused an application for writ of habeas corpus filed by Imagene Lillard to change the custody award which had theretofore been made to Sam Davis, Chief Probation Officer of Dallas County. This order was entered by the Juvenile District Court of Dallas County in a proceeding styled Imagene Lillard v. John S. Lillard, but given a cause number (58720-Juv.) different from that of the original divorce case.

---

5.—Although all judicial proceedings in Dallas County were had in the Juvenile District Court, it appears that at least three judges signed orders in the cause under a system of rotation of judges in handling the county's juvenile docket.

■ The record presents a case of two district courts of coordinate power issuing conflicting orders as to an identical subject matter. The Dallas Court has awarded custody of the child to Sam Davis, Chief Probation Officer of Dallas County. The Tarrant Court has awarded custody to Imagene Lillard, the mother of the child. One or the other of these decrees is void for lack of jurisdiction of the subject matter. As the Dallas Court first acquired jurisdiction of the subject matter it follows that the Tarrant decree is void, Texas Trunk Ry. Co. v. Lewis, Sheriff, 81 Texas 1, 16 S.W. 647; O'Neil v. Norton, Texas Com. App., 29 S.W. 2d 1060, and Lee Lillard cannot be legally held in contempt for violating a void decree. Ex parte Eaton, 151 Texas 581, 252 S.W. 2d 557. "One cannot (as Imagene Lillard did in this case) invoke the jurisdiction of the court to deal with the personal status or the person of a child and at the same time deny the power of the court, in that proceeding, to do with the child's person or his status whatever appears to the court to be for the best interest of the child." Knollhoff v. Norris, 152 Texas 231, 256 S.W. 2d 79, 82.

Some quoting and paraphrasing of the language contained in this Court's opinion in the leading case of Cleveland v. Ward, 116 Texas 1, 285 S.W. 1063, 1071, will dispose of the case now before us. When Imagene Lillard filed her so-called "motion for change of residence of minor child" in the Dallas Court, she invoked the jurisdiction of that court to change the status of the minor child from that fixed by the divorce decree. This occurred on September 25, 1956, long before any proceedings were had in the Tarrant Court. The filing of this motion must be considered as the institution of a new action which had for its purpose the modification of the custody provisions contained in the original judgment. Undoubtedly from and after the filing of this motion the Dallas Court was authorized to grant the prayer of the petition or motion or make such other disposition of the custody matter as might be justified under the pleadings and the facts disclosed upon a hearing. Imagene Lillard at no time sought a discontinuance of the Dallas Court proceedings which she had instituted, although perhaps unfortunately she ignored the court action which she placed in motion and failed to appear at the time set for a hearing as to the custody of her minor child. Since jurisdiction attached upon her institution of the proceedings in Dallas County the rule is elementary that it could not be taken away or arrested by subsequent proceedings in another court. The Dallas Court having first acquired jurisdiction could exercise it to dispose of the whole subject matter of the litigation (the custodial status of the minor child) and adjust all

equities between the parties. The causes of action asserted in the Dallas Court and the Tarrant Court arise out of the same facts and involve the same subject matter. It follows that the proceedings in the Tarrant Court were abated by the Dallas Court suit. "The reason of the abatement of the subsequent suit by the first, where the latter is filed in a court of competent jurisdiction and that jurisdiction has attached, is that when the suit is brought, it is thereby segregated as it were from the general class to which it belonged, and withdrawn from the authority and jurisdiction of all other courts of co-ordinate power." Since the Tarrant Court "had no jurisdiction of this particular case, what was done therein was necessarily void, for judicial action without jurisdiction is void."

In Cleveland v. Ward the following excerpt from Freeman on Judgments (Vol. 1, Sec. 335) was quoted with approval:

"It seems impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties. If either has authority to act, its action must necessarily be exclusive, and therefore it is our judgment that whenever either the state or the national courts acquire jurisdiction of an action and the parties thereto, this jurisdiction cannot be destroyed, diminished, or suspended by one of the parties bringing an action in another court, and that any judgment or order of the latter court is void so far as it conflicts with any judgment or order of the court first acquiring jurisdiction."

That Court then continued:

"This extract from Freeman we believe states the sound rule, and the only rule which will prevent races from court to court by vigilant counsel, such as this record discloses, and that conflict in the exercise of judicial power in evidence here, which we believe was never contemplated under our judicial system. Courts are erected to settle controversies, not to multiply them. At any rate, the rule announced by Freeman is the one we adopt, and is consistent with that declared by Justice Lipscomb in 1852 in the Burdett Case, cited above [Burdett v. State, 9 Texas 43].

"What has been said is not in conflict with the doctrine of various cases that the pendency of a suit in another jurisdiction must be seasonably pleaded in abatement, that the plea may be waived, and that final judment by default, or in the

absence of pleading and proof of the pendency of a prior suit will be sustained. See the cases of Cook v. Burnley, 11 Wall. 659, 20 L. Ed. 29; Cook v. Burnley, 45 Texas 97; Blasingame v. Cattlemen's Trust Co. (Texas) 174 S.W. 900; Cattlemen's Trust Co. v. Blassingame (Texas Civ. App.) 184 S.W. 574; McCoy v. Bankers' Trust Co. (Texas Civ. App.) 200 S.W. 1138. See, also, 1 Ruling Case Law, pp. 19, 20.

"These opinions are authority for the proposition that, since the pendency of a prior suit is predicated upon a state of facts, the facts must be seasonably alleged and proved, and, unless this is done, the judgment of the subsequent court is conclusive on the fact of jurisdiction as upon any other fact. Freeman on Judgments (5th Ed.) Vol. 2, Sections 660, 662. This does not militate against our conclusion that, once the necessary facts are pleaded and admitted or proven, or shown by the undisputed record, as in this case, the subsequent suit is abated and its orders void for want of jurisdiction."

Ordinarily the remedy for the erroneous overruling of a plea of another suit pending is by appeal. But this is not the exclusive remedy in all situations, Wheeler, Receiver v. Williams, District Judge, 158 Texas 383, 312 S.W. 2d 221, 1 Texas Jur. 125, Abatement and Revival, Sec. 91, particularly when as here, conflicting judgments issued by courts of coordinate jurisdiction have resulted. In this situation it seems obvious that the judgment of the court lacking jurisdiction must be considered inoperative.

The only possible distinction that can be suggested between the proceedings in the Dallas Court and those in the Tarrant Court rests upon the difference in parties. Here the documentary record made up of exhibits accompanying the application for the writ of habeas corpus and the answer thereto is not as clear as might be desired. Imagene Lillard's original pleading seeking a change in custody arrangements is not before us. It may be that Lee Lillard was made a party thereto and subsequently dismissed. There is some suggestion made in Lee Lillard's plea in abatement filed in the Tarrant Court that the Dallas Court granted Imagene Lillard leave to bring in new parties so that Lee Lillard could again be made a party to the Dallas proceeding. There is also an entry on the docket indicating that a plea of privilege was filed by someone, presumably Lee Lillard. However that may be, Lee Lillard was not a party to the original divorce suit in which the custody of the child as between the parties, Imagene Lillard and John S. Lil-

lard, was originally fixed. This decree gave no custodial rights to Lee Lillard and his wife, but simply provided as a condition to the award of custody to Imagene Lillard that the child should remain in the residence of Mr. and Mrs. Lillard. It was a condition of custody much the same as the more usual provision that the child shall remain within the State or within the jurisdiction of the court. It could be changed in a proper proceeding in a court of competent jurisdiction in a suit between the parties to the original court decree. The Dallas Court's jurisdiction was invoked to change the custody order and such jurisdiction could not be defeated by leaving the Dallas proceeding pending and filing a suit in Tarrant County against Lee Lillard and wife only. The Dallas Court was the tribunal possessing prior and exclusive jurisdiction of the custody controversy, and it follows that the decree of the Tarrant Court rendered on June 7, 1957 is void for want of jurisdiction. Findings of contempt cannot be predicated upon such judgment. Accordingly relator is ordered discharged.

Opinion delivered June 18, 1958.

### ON MOTION FOR REHEARING

MR. JUSTICE NORVELL delivered the opinion of the Court.

We have considered the motion for rehearing but adhere to the holdings expressed in our original opinion. Certified copies of various pleadings filed in the Dallas Court were submitted with the motion but these do not disclose a substantially different factual basis from that presented by the record before us at the time of the original submission. Further writing is deemed unnecessary.

The motion for rehearing is overruled.

Opinion delivered July 23, 1958.

MR. JUSTICE CALVERT joined by JUSTICE WALKER dissenting.

The record now before us shows that Imagene Lillard had dismissed her suit against Lee Lillard in Dallas County before filing her suit against Mr. and Mrs. Lee Lillard in Tarrant County on February 26, 1957. It therefore appears that at the time of the hearing in the District Court of Tarrant County on May 24, 1957, and at the time of the entry of judgment therein on June 7, 1957, there was no suit then pending in Dallas County between the same parties involving the same subject matter.

Mr. and Mrs. Lee Lillard had physical possession of the minor in Tarrant County. The suit filed by Imagene Lillard in Tarrant County was the proper method and the Tarrant County District Court was the proper forum for adjudicating all issues of custody and possession of the minor as between Imagene Lillard and Mr. and Mrs. Lee Lillard, Knollhoff v. Norris, 152 Texas 231, 256 S.W. 2d 79.

The fact that there was then pending in Dallas County a suit between Imagene Lillard and her former husband, John S. Lillard, in which the District Court of Dallas County had jurisdiction to determine rights of custody as between those parties, in no way militated against the jurisdiction of the Tarrant County District Court to determine similar questions between Imagene Lillard and Mr. and Mrs. Lee Lillard.

It is my opinion that the judgment of the District Court of Tarrant County awarding custody of the minor child to Imagene Lillard as against any claim of right to possession or custody of such child by Lee Lillard was a valid judgment and that in violating that judgment by removing the child from the custody and possession of Imagene Lillard, Lee Lillard was in contempt of the judgment of the court. He should be remanded to the custody of the sheriff of Tarrant County for his contempt.

Inasmuch as the majority have ordered the release of Lee Lillard, I express no opinion as to whether his punishment could exceed a fine of $100 and confinement in the County jail for a period of three days.

Opinion delivered July 23, 1958.